IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ROBERT L. MATTHEWS, )
 )
        Plaintiff, )
 )
v. ) Civil Action No. 3:17cv271–HEH
 )
TRACY GEE, *et al.*, )
 )
        Defendants. )

### MEMORANDUM OPINION
(Granting Plaintiff's Motion to Proceed *In Forma Pauperis*
and Dismissing the Complaint)

THIS MATTER is before the Court on Plaintiff Robert L. Matthews's ("Plaintiff") Motion to Proceed *In Forma Pauperis*. (ECF No. 4.) The Court concludes that Plaintiff is unable to pay the required fees. Therefore, Plaintiff's Motion will be granted. Plaintiff may proceed in this case without paying the Court's filing fee. The Court will direct the Clerk to file Plaintiff's Complaint.[1] (ECF No. 1.)

Plaintiff, who is *pro se*, brings suit against Lunenburg County, Virginia, as well as Tracy Gee and Nicole Clark, in their respective capacities as County Administrator and Human Resource Professional for Lunenburg (collectively, the "Defendants"). According to Plaintiff, the Defendants are liable for defamation and for multiple

---

[1] Plaintiff has styled this filing as an "Amended Complaint," presumably in reference to his previous Complaint against these Defendants, which the Court dismissed by Memorandum Opinion and Order on March 9, 2017. *See Matthews v. Gee*, Civil Action No. 3:17cv32 (ECF Nos. 18, 19). Because Plaintiff's previous case was closed, the Court will treat the present filing as an attempt to file a new action and will refer to it as his "Complaint."

1

violations of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, related to the termination of Plaintiff's employment.

For the reasons set forth below, however, the Court finds Plaintiff's Complaint fails to state a claim and is largely frivolous. Accordingly, the Court will dismiss Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and Federal Rule of Civil Procedure 8(a)(2).

## I. BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true and views all facts in the light most favorable to him. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). At this stage, the Court's analysis is both informed and constrained by the four corners of Plaintiff's Complaint. Viewed through this lens, the facts are as follows.

This case arises from Plaintiff's employment with Lunenburg County. (Compl. ¶¶ 5–6.) In June 2007, the County hired Plaintiff as a "buildings and grounds technician," though "no job description was provided . . . at the time of hire." (*Id.* ¶ 5.) Three years later, in July 2010, the Defendants offered Plaintiff additional part-time work as an assistant Animal Control Officer ("ACO"). (*Id.* ¶ 6.) Plaintiff received initial training for the ACO position in March 2011. (*Id.* ¶ 9.) Plaintiff subsequently requested that the Defendants provide him with additional training as well as personal protective equipment. (*Id.* ¶¶ 10–11.) Those requests were denied. (*Id.*)

On May 20, 2012, while working as an ACO, Plaintiff responded to a call reporting a dog attack. (*Id.* ¶ 12.) Immediately after Plaintiff arrived at the scene and exited his vehicle, the dog assaulted him as well. (*Id.*) Plaintiff suffered multiple lacerations and punctures to his throat, hands, and wrists. (*Id.*) He also sustained injuries that caused an "11% permanent disability" in each shoulder. (*Id.* ¶¶ 14, 16.)

As a result of the dog attack, Plaintiff filed a Worker's Compensation ("W.C.") claim, which was approved. (*Id.* ¶ 13.) However, that "claim is still pending resolution and settlement." (*Id.*)

After the incident on May 20, 2012, "Defendant[s] terminated Plaintiff's employment in the position of ACO." (*Id.* ¶¶ 15–16.) Plaintiff remained out of work for two years while recovering from his work-related injuries. (*Id.* ¶ 16.)

On May 1, 2014, Plaintiff returned to part-time work as a buildings and grounds technician with Defendants' approval of light-duty restrictions. (*Id.* ¶ 19.) He then resumed full-time work in August 2014. (*Id.* ¶ 20.) Despite the Defendants' accommodations, Plaintiff continued to experience pain in his right shoulder. (*Id.* ¶¶ 19–20.) He alleges that this pain necessitated further surgery, which he scheduled for September 11, 2015. (*Id.* ¶¶ 19–21.)

On September 4, 2015, one week prior to the surgery, Plaintiff received a letter from Clark referencing the Family and Medical Leave Act ("FMLA"). (*Id.* ¶ 21.) The letter explained that Plaintiff's surgery qualified for leave pursuant to the FMLA and that he could continue to be paid through W.C., with the possibility of supplementing his

3

income through sick leave. (Compl. Ex. 1, at 1, ECF No. 1-1.) The letter also stated that Plaintiff's FMLA leave would be exhausted on December 4, 2015. (*Id.* at 1–2.)

Plaintiff subsequently spoke with Clark and told her that he "would use [his] sick leave time from 11 Sept 2015 (the date of surgery) until 30 Sept 2015 (Intermittent Leave), then Plaintiff would switch to W.C. on 1 Oct 2015 and start receiving W.C. payments from VACORP, the county's insurance carrier." (Compl. ¶ 21.) Plaintiff asserts that he memorialized this conversation in a written letter and then took it to Clark, who subsequently "accepted the agreement." (*Id., see also* Compl. Exs. 2–3, ECF Nos. 1-2, 1-3.)

Plaintiff underwent shoulder surgery on September 11, 2015, and began his period of FMLA leave. (Compl. ¶¶ 19–20.)

On December 2, 2015, Gee sent Plaintiff a certified letter reminding him that his FMLA leave would expire on December 4, 2015, and verifying that he intended to return to full-duty work on December 7, 2015. (*Id.* ¶ 23; *see also* Compl. Ex. 4, ECF No. 1-4.) Plaintiff reported to work on December 4, seeking to return with his prior light-duty restrictions in place. (*See* Compl. ¶ 24 (referencing his treating physician's "orders for sedentary work on approximately 4 Dec 2015").) However, Gee stated, "No light duty work is available. You are terminated." (*Id.*) On December 14, 2015, shortly after his termination, Plaintiff asserts that his "restrictions were upgraded" by his attending physician. (*Id.*)

Plaintiff contends that on December 8, 2015, he received a certified letter from Gee stating that "[he was] considered to have resigned from [his] position." (Compl. Ex.

4

5, ECF No. 1-5.) Plaintiff then alleges that he republished this statement on January 4, 2016 (*id.* ¶ 30 (filing his EEOC charge)), May 14, 2016 (*id.* ¶ 31 (sending additional papers to the EEOC)), August 30, 2016 (*id.* ¶ 32 (filing his original Complaint in the Lunenburg County Circuit Court)), and December 30, 2016 (*id.* ¶ 33 (filing his First Amended Complaint in the Lunenburg County Circuit Court)).

## II. STANDARD OF REVIEW

The statute governing *in forma pauperis* ("IFP") filings provides that "the court shall dismiss the case at any time if the court determines that the action or appeal is frivolous or . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(i)–(ii); *see also Michau v. Charleston Cty*, 434 F.3d 725, 728 (4th Cir. 2006) ("28 U.S.C. § 1915(e) . . . governs IFP filings *in addition to* complaints filed by prisoners . . . ." (emphasis added)).

When determining whether an action is "frivolous," the Fourth Circuit has noted that "[t]he word . . . is inherently elastic and 'not susceptible to categorical definition.'" *Nagy v. FMC Butner*, 376 F.3d 252, 256 (4th Cir. 2004) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)). "It is designed to confer on district courts the power to sift out claims that Congress found not to warrant extended judicial treatment under the in forma pauperis statute." *Id.* "The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." *Id.* at 257. "[D]istrict courts are at liberty to consider any factors that experience teaches bear on the question of frivolity." *Id.*

When assessing whether an IFP complaint "fails to state a claim on which relief may be granted," courts conduct a similar analysis to that used when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). Rule 8(a)(2), which governs pleading generally, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted).

Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When considering an IFP filing, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft*, 556 U.S. at 678.

Additionally, the Court acknowledges that *pro se* complaints are afforded a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). The Court, however, need not attempt "to discern the unexpressed intent of the plaintiff." *Id.* Nor does the requirement of liberal construction excuse a clear failure in the pleading to allege a federally cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990). As the Fourth Circuit explained in *Beaudett v. City of Hampton*, "[t]hough [*pro se*] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." 775 F.2d 1274, 1276 (4th Cir. 1985).

### III. DISCUSSION

Plaintiff has attempted to separate his Complaint into four "causes of action": (Count One) wrongful termination, in violation of the ADA; (Count Two) failure to accommodate, in violation of the ADA; (Count Three) defamation; and (Count Four) retaliation, in violation of the ADA. (Compl. ¶¶ 35–38.)

Notwithstanding Plaintiff's organization, the Court will first address his defamation claim before considering his allegations arising under the ADA.[2]

---

[2] Though not set forth in his "causes of action," Plaintiff makes passing allegations that the Defendants violated the Privacy Act, 5 U.S.C. § 552a. (*See* Compl. ¶¶ 17–18.) The Court previously dismissed these claims with prejudice, noting that they "fail because that statute only applies to federal agencies. . . . [E]ven if Defendants had engaged in conduct proscribed by the Privacy Act, Plaintiff has no cause of action under that statute." *Matthews v. Gee*, Civil Action No. 3:17cv32 (ECF No. 18, at 10).

### a. Defamation

Plaintiff's claim for defamation appears to be rooted in two, separate statements. The first comes from the December 2, 2015, certified letter that he received from Gee, which stated, in part: "By letter of September 4, 2015, I, on behalf of Lunenburg County, notified you that not only were you eligible for protected leave under the [FMLA], but that your requested leave commencing on September 11, 2015 for surgery qualified for protected leave under the [FMLA]." (Compl. Ex. 4.) Plaintiff contends that "[t]his was a willfull [sic] and false statement in that [he] talked to Defendant Clark and not Defendant Gee about this matter." (Compl. ¶ 23.) The Complaint contains no facts suggesting that this letter was sent to anyone other than Plaintiff or that its contents were published to a third party.

The second statement comes from the December 8, 2015, certified letter from Gee, which read, in part: "[Y]ou are considered to have resigned from your position effective December 7, 2015." (Compl. Ex. 5.) Plaintiff asserts that "[t]his was a willfull [sic] and false statement that goes against Plaintiff's good name, reputation, and character." (Compl. ¶ 29.) Again, the Complaint is devoid of any facts alleging that anyone other than Plaintiff received this letter or that the letter's contents were published to a third party.

To properly allege defamation by publication in Virginia, plaintiffs must plead that a defendant has "(1) publi[shed] . . . (2) an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 737 S.E.2d 890, 892 (Va. 2013) (citation and internal

quotation marks omitted); *see also Schaecher v. Bouffault*, 772 S.E.2d 589, 594 (Va. 2015); *Hyland v. Raytheon Tech. Servs. Co.*, 670 S.E.2d 746, 750 (Va. 2009).[3]

After reviewing Plaintiff's claim, the Court concludes that he has, at a minimum, failed to satisfy the first two requisite elements. Under the first element, the Complaint is devoid of any factual allegation that the Defendants published the purportedly defamatory statements to a third party. Being a county, Lunenburg "could only speak through its agents." *Chalkley v. Atl. Coast Line R.R. Co.*, 143 S.E. 631, 641 (Va. 1928). Because the letters were communications from Gee—acting as an agent for Lunenburg—sent directly to Plaintiff, "and there is no [allegation] showing any publication of the alleged [defamatory] matter by [the county], or its agents ... there is no basis for the action." *Id.*

And even if Plaintiff had alleged that the Defendants published the statements, the Court would still conclude that he failed to satisfy the second element because neither is "actionable." *Tharpe*, 737 S.E.2d at 892. According to well-settled law, an actionable statement in Virginia must be "both false and defamatory," *Schaecher*, 772 S.E.2d at 594, meaning that it "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts § 559. "A false statement must have the requisite defamatory 'sting' to one's reputation." *Schaecher*, 772 S.E.2d at 594. In other words, the statement must "tend[] to injure one's reputation in the common estimation of

---

[3] Plaintiff is required to plead that Defendants published the purported defamatory statements. Consequently, his factual allegations related to his own "republication" of the statements are immaterial. (*See* Compl. ¶¶ 29–33.)

mankind, to throw contumely, shame, or disgrace upon him, or . . . tend[] to hold him up to scorn, ridicule, or contempt, or . . . render him infamous, odious, or ridiculous." *Id.* (quoting *Moss v. Harwood*, 46 S.E. 385, 387 (Va. 1904)).

The Court finds that neither statement is actionable because they are not "reasonably capable of defamatory meaning." *Id.* at 595; *see also Carwile v. Richmond Newspapers, Inc.*, 82 S.E.2d 588, 591–92 (Va. 1954) ("[I]t is a general rule that allegedly defamatory words are to be taken in their plain and natural meaning and to be understood by courts . . . as other people would understand them, and according to the sense in which they appear to have been used.").

The first statement—Gee's contention that she sent the September 4, 2015, letter—has no bearing whatsoever on Plaintiff's reputation. And the second statement—that Plaintiff was considered to have resigned from his position when he did not return to full-duty work—is equally deficient. This is particularly apparent when read within the context of the December 2, 2015, letter reminding Plaintiff that his FMLA leave expired on December 4, 2015, and "verify[ing his] intent to return to full-duty work." (Compl. Ex. 4; *see also* Compl. ¶ 23 (stating that according to the Lunenburg personnel manual, an employee who does not return to his position after a leave of absence "shall be considered to have resigned his or her position").) Therefore, because neither statement carries the requisite "sting" to Plaintiff's reputation, the Court concludes that both are insufficient to support a claim for defamation.

Assuming *arguendo* that Plaintiff had properly pleaded the requisite elements, the Court would find that this action warrants dismissal because it is "frivolous." *See* 28

U.S.C. § 1915(e)(2)(B)(i). The alleged defamatory statements were made beyond the one-year scope of Virginia's applicable statute of limitations—which Plaintiff quoted in his Complaint. (*See* Compl. ¶ 37 (quoting Va. Code Ann. § 8.01-247.1 ("Every action for injury resulting from . . . defamation shall be brought within one year after the cause of action accrues.")).) While it is evident that Plaintiff tried to circumvent this requirement by pleading that *he* republished the statements numerous times within the past year, *see supra* note 3, the Court construes this attempt to enlarge the applicable statute of limitations as patently frivolous. That alone warrants dismissal.

Consequently, the Court concludes that Plaintiff's claim for defamation is meritless and has no hope of being resuscitated by additional facts. Therefore, it must be dismissed with prejudice.[4]

### b. ADA Claims

Plaintiff also brings claims pursuant to the ADA for wrongful termination, failure to accommodate, and retaliation. (Compl., ¶¶ 35–36, 38.) The Court will address each in turn.

#### *i. Wrongful Termination*

Plaintiff's first ADA allegation is that Defendants unlawfully discriminated against him when they terminated his employment on December 4, 2015.

Title I of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees." 42

---

[4] Plaintiff appears to raise additional defamation claims related to written statements and emails placed in his personnel file beginning in May 2012. (*See* Compl. ¶¶ 17–18.) The Court previously dismissed these claims with prejudice because they were procedurally barred by Virginia's statute of limitations. *See Matthews v. Gee*, Civil Action No. 3:17cv32 (ECF Nos. 18, at 7–9).

U.S.C. § 12112(a). "In a typical discharge case brought under the ADA, a plaintiff must [plead facts sufficient to allege] that (1) [he] was in the protected class; (2) [he] was discharged; (3) at the time of the discharge, [he] was performing [his] job at a level that met [his] employer's legitimate expectations;" and that (4) his disability was the "but-for" cause of his discharge. *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995) (citations omitted) (first three elements); *Gentry v. East West Partners Club Mgmt. Co., Inc.*, 816 F.3d 228, 233–36 (4th Cir. 2016) (fourth element).

The Court finds that Plaintiff has not stated a plausible claim because he has failed to satisfy both the third and fourth elements. He has pleaded no facts indicating that he was performing his job at a level that met his employer's legitimate expectations at the time he was discharged. Indeed, Plaintiff concedes that he was only able to return to "sedentary work" on December 4, 2015, which included "walking or standing occasionally [and] occasional[ly] lifting up to 10 pounds and carrying items like small tools." (Compl. ¶ 24; Compl. Ex. 5; Compl. Ex. 11, ECF No. 1-11.) But, as Clark noted, "[a] large portion of [Plaintiff's] job involve[d] walking and standing. Also he would need to be able to [lift] more than 10 pounds." (Compl. Ex. 11; *see also* Compl. ¶ 24 ("No light duty work is available."); Compl. Ex. 5 ("[Y]our previously held position . . . requires work that would exceed [the sedentary] work restrictions.").) Therefore, it is evident from the face of the Complaint that Plaintiff was restricted from performing his job at a level that met his employer's legitimate expectations at the time he was discharged.

Moreover, Plaintiff has failed to allege any facts indicating that his discharge occurred under circumstances that would permit an inference of discrimination based on his status as a disabled person. *See Gentry*, 816 F.3d at 233–36. Plaintiff alleges that he was terminated for filing a workers' compensation claim and for his inability to return to full-duty work. Although Plaintiff's disability may have affected his capacity to work, Plaintiff does not plead sufficient facts to support a plausible claim that his termination was based on discrimination due to his disability.

Therefore, Plaintiff's discrimination claim must be dismissed.

### *ii. Failure to Accommodate*

The Complaint also lacks a sufficient factual basis to demonstrate a plausible claim that Defendants failed to accommodate Plaintiff's disability.

Title I of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability" by "not making reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability who is an . . . employee, unless [a] covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

For a failure-to-accommodate claim, a plaintiff must plead sufficient facts to show that "(1) [he] qualifies as an 'individual with a disability,' (2) the [employer] had notice of [the plaintiff's] disability, (3) [the plaintiff] could perform the essential functions of [the] job with a reasonable accommodation, and (4) the [employer] refused to make any reasonable accommodation." *Reyazuddin v. Montgomery Cty.*, 789 F.3d 407, 414 (4th

13

Cir. 2015) (citation omitted). The Court finds that Plaintiff has failed to plead facts sufficient to show that he could satisfy the third element.

A reasonable accommodation is one that will not impose an "undue hardship" on the employer's operation of business. *See id.* at 416–417; *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995) (citations omitted) ("In mandating only those modifications that qualify as reasonable, Congress clearly meant to avoid placing employers in an untenable business position."). If a qualified individual cannot perform the essential functions of the job in question, an employer may be obligated to assign a disabled employee to a vacant position for which he is otherwise qualified. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 498 (7th Cir. 1996). However, an employer is not obligated to "create a 'new' position for the disabled employee." *Id.* at 499. Additionally, the ADA does not reference "an individual's *future* ability to perform the essential functions of his position." *Myers*, 50 F.3d at 283. Therefore, a "reasonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Id.*

Plaintiff appears to allege that Defendants failed to provide reasonable accommodations by: (1) refusing Plaintiff's request to return to light-duty work; (2) failing to provide the same accommodations that were afforded to him when he was out of work from 2012 through 2014; and (3) not extending Plaintiff's leave time until his physical restrictions were lifted. (Compl. ¶ 36.) However, Plaintiff has failed to sufficiently plead that Defendants' refusal to accommodate his alleged disability violated the ADA.

First, Plaintiff asserts that upon return from FMLA leave he requested to perform only light-duty work. (Compl. ¶ 24 ("Plaintiff asserts that he remained under . . . medical orders for sedentary work".).) But Defendants responded by informing him that "[n]o light duty work [was] available." (*Id.*) The Complaint does not challenge the fact that no light-duty position was available. Thus, it appears that Defendants would have had to create a new position for Plaintiff. The ADA simply does not require this. *Giles*, 95 F.3d at 499. Even when viewed in the light most favorable to Plaintiff, the Complaint fails to support his argument that light-duty work would constitute a reasonable accommodation.

Second, Plaintiff asserts that Defendants should have provided him the same accommodations that were previously afforded to him while he was out of work from 2012 through 2014. However, because allowing an employee to remain *out of work* is obviously not a reasonable accommodation to enable that employee *to work*, this contention is unmeritorious.

And third, Plaintiff contends that Defendants should have allowed him to have additional medical leave. (Compl. ¶ 24.) But the ADA only requires employers to provide accommodations that would enable the disabled employee to perform the essential functions of his job. Because additional leave would necessarily render plaintiff's job unperformed, it is not the type of accommodation contemplated by the ADA. *See Myers*, 50 F.3d at 283 ("We therefore hold that reasonable accommodation does not require the County to wait indefinitely for Myers' medical conditions to be corrected . . . .").

Accordingly, Plaintiff's failure-to-accommodate claim will be dismissed.


### *iii. Retaliation*

In his last cause of action, Plaintiff alleges that Defendants' termination of his employment was unlawful retaliation.

"To establish a prima facie retaliation claim under the ADA, a plaintiff must prove (1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012). In defining protected conduct, the ADA provides that, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice *made unlawful by this chapter* or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing *under this chapter*." 42 U.S.C. § 12203 (emphasis added).

Consequently, a person engages in protected conduct when he opposes a practice that the ADA makes illegal or makes an accusation that his employer has violated the ADA. *See Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002). Although a plaintiff need not show the conduct actually constituted an ADA violation, the person must allege "the predicate for a reasonable, good faith belief that the behavior she is opposing violates the ADA." *Id.*

Plaintiff's alleges that he "was wrongfully terminated in retaliation for costs associated with a legitimate [W.C.] claim in violation of the [ADA]." (Comp. ¶ 38.) However, Plaintiff's allegations regarding his workers' compensation claim are wholly independent and separable from conduct made illegal by the ADA. *See Reynolds*, 701

16

F.3d at 154 ("The retaliation claim based on [plaintiff's] worker's compensation inquiry also fails. . . . Filing a workers' compensation claim is not something that is covered by the ADA, but rather by retaliation provisions under state law.").

Consequently, Plaintiff's retaliation claims will also be dismissed.

### iv. Frivolous Claims

As an additional matter, the Court observes that Plaintiff's ADA claims are nearly identical to those previously raised—and dismissed—in his prior Complaint. (*Compare* Compl., *with Matthews v. Gee*, Civil Action No. 3:17cv32 (ECF No. 1-11).) Though Plaintiff has added a few intermittent factual allegations and Exhibits, the most significant difference between the two filings is that Plaintiff has removed several facts that this Court previously determined were fatal to his causes of action under the ADA.

Therefore, rather than "amplify[ing] the factual and legal basis on which [his claims] rest," *Matthews v. Gee*, Civil Action No. 3:17cv32 (ECF No. 19), Plaintiff has attempted to circumvent this Court's previous ruling to enable his case to escape dismissal. This is clearly impermissible. And so, as an alternate ground, the Court finds that Plaintiff's present claims are "frivolous" and must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

In light of the preceding analysis—with regard to both the sufficiency and frivolity of the pleading—the Court determines that no future amendment could revive Plaintiff's ADA claims. Consequently, the Court will dismiss them with prejudice.

## IV. CONCLUSION

Based on the forgoing, the Court will grant Plaintiff's Application to Proceed *In Forma Pauperis* and will direct the Clerk to file Plaintiff's Complaint. However, because Plaintiff's Complaint fails to state a claim and is largely frivolous, the Court will dismiss it with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and Federal Rule of Civil Procedure 8(a)(2).

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: June 30, 2017
Richmond, Virginia